**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

v.

                                                              2:25-cr-00294-MIS

JUAN GOMEZ MONTIEL,

  Defendant.

**ORDER DENYING IN PART AND DEFERRING RULING IN PART ON OPPOSED
SPEEDY TRIAL DEMAND, MOTION TO SEVER OR ALTERNATIVELY MOTION
FOR RECONSIDERATION OF RELEASE**

THIS MATTER is before the Court on Defendant Juan Gomez Montiel ("Defendant")'s Opposed Speedy Trial Demand, Motion to Sever or Alternatively Motion for Reconsideration of Release ("Motion"), ECF No. 136, filed June 20, 2025.  The Government filed a Response on June 27, 2025 ("Response"), ECF No. 138, to which Defendant filed a Reply on June 30, 2025 ("Reply"), ECF No. 140.  Upon review of the Parties' submissions, the record, and the relevant law, the Court will **DENY** the Motion as to the request for severance and **DEFER RULING ON** the Motion as to the alternative request for revocation of the Magistrate Judge's pretrial detention order, which the Court will set for a hearing by separate notice.

**I.     Background**

On February 19, 2025, a Grand Jury sitting in the District of New Mexico returned a one-count Indictment charging Defendant and several co-conspirators with conspiracy to transport, harbor, and bring illegal aliens into the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I).  Indictment at 1-2, ECF No. 3.  The Indictment alleges thirty-eight overt acts in furtherance of the conspiracy, only one of which names Defendant—specifically:

Overt Act Thirty-Six

On February 6, 2025, Juan Gomez Montiel and Jorge Valdez-China contacted an undercover agent to pick up eight undocumented aliens stranded near Pinon, New Mexico, and transport them to Albuquerque, New Mexico.

Id. at 8.  The undocumented aliens were "stranded" due to a broken-down vehicle.  See Resp. at 2.

However, an unnamed co-conspirator "was able to repair the vehicle and take four aliens, leaving four stranded.  Jorge Valdez-China then requested the undercover agent to pick up the remaining four aliens."  Id.; see also Indictment at 8.

Defendant was arrested by a Border Patrol agent on March 7, 2025, see ECF No. 93, and pleaded not guilty at his arraignment on March 13, 2025, see ECF No. 105.  On March 18, 2025, United States Magistrate Judge Jerry H. Ritter issued an Order of Detention Pending Trial following a detention hearing ("Detention Order").  ECF No. 116.  The reasons for detention included the weight of the evidence against Defendant, his history of alcohol or substance abuse, a lack of significant community or family ties to this district, significant family or other ties outside the U.S., that Defendant is subject to removal or deportation after serving any period of incarceration, and an "[a]ctive warrant from Texas DPS issued 10/27/24 for manufacture or delivery of cocaine."  Id. at 2-3.  According to the Government, Defendant is a lawful permanent resident of the United States, but was living in Juarez, Mexico prior to his arrest.  Resp. at 8.

On March 19, 2025, the Parties filed an Amended Joint Motion to Declare Case Complex ("Joint Motion").  ECF No. 118.  The same day, the Court issued an Order Declaring the Case Complex pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii) and excluding all of the time from the filing of the Joint Motion until the beginning of the jury trial from the Speedy Trial Act calculation, 18 U.S.C. § 3161(h)(7)(A).  ECF No. 119 at 1-2.

On June 17, 2025, the Court issued a Scheduling Order setting trial for November 3, 2025. ECF No. 135 at 2.

On June 20, 2025, Defendant filed the instant Opposed Speedy Trial Demand, Motion to Sever or Alternatively Motion for Reconsideration of Release.  ECF No. 136.  The Government filed a Response, ECF No. 138, to which Defendant filed a Reply, ECF No. 140.

## II.     Legal Standards

### a.     Severance

Pursuant to Federal Rule of Criminal Procedure 8(b), an indictment may charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately."  Fed. R. Crim P. 8(b).  Rule 8(b) "is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system." United States v. Hopkinson, 631 F.2d 665, 668 (10th Cir. 1980); see also United States v. Hill, 786 F.3d 1254, 1272 (10th Cir. 2015).

Under Rule 14(a), "[i]f the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant . . . , the court may . . . sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).  "The grant of a severance lies in the sound discretion of the trial court and a defendant has a heavy burden to show prejudice by the joinder."  Hopkinson, 631 F.2d at 668.

### b.     Release from pretrial detention

"Under the Bail Reform Act, a defendant may be detained pending trial only if a judicial officer finds 'that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'"  United States

v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003) (quoting 18 U.S.C. § 3142(e)).  "A judicial officer may make such a finding only after holding a hearing according to the procedures specified in § 3142(f), and the government bears the burden of proof at that hearing."  Id.  "The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence."  Id. (cleaned up).  "[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," the judicial officer must consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).  "If, after the hearing and consideration of the above factors, a judicial officer orders that a defendant be detained, the order must 'include written findings of fact and a written statement of the reasons for the detention.'"  Cisneros, 328 F.3d at 617 (quoting 18 U.S.C. § 3142(i)(1)).

"If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the

order. The motion shall be determined promptly." 18 U.S.C. § 3145(b). A district court reviews a magistrate judge's detention order de novo. Cisneros, 328 F.3d at 616 n.1.

## III.    Discussion

Defendant asserts his right to a speedy trial[1] and seeks severance from the remaining defendants, vaguely arguing that his "minor role, alleged participation in one act and total absence from any produced discovery suggest that continued delay could unfairly prejudice the defense by prolonging uncertainty and potentially impairing the ability to prepare for trial." Mot. at 2. He further argues that he "will be presumably past time served even if a conviction on the bare alleged facts is true by trial in November 2025." Id. As to his "past time served" assertion, Defendant "expects to have a level 8 (0-6) month guideline range without acceptance of responsibility being applied." Id. Defendant appears to argue that the Court should sever his trial from that of his co-defendants to avoid a potential speedy trial violation. Id. at 2-3. Alternatively, he requests that the Court "hold and conduct a review of the detention decision in this matter." Id. at 3. In the "Conclusion" section, Defendant additionally asserts—without analysis or citation to authority— that "the delay is presumptively prejudicial . . . ." Id.

The Government initially states—in an apparent rebuttal to Defendant's "total absence from any produced discovery" assertion, see id. at 2—that the conversations between Defendant, Jorge Valdez-China, and the undercover agent were recorded, "played for [Defendant's] defense counsel before [Defendant's] detention hearing[,]" disclosed to all defendants via USAFx on March 17, 2025, and disclosed "again to [Defendant] on June 24, 2025, to ensure he was able to download it from the USAFx system." Resp. at 2. The Government argues that the overt acts with

---

[1]    Defendant has **not** moved to dismiss on speedy trial grounds.

which Defendant is charged "show that he was not only involved with the Valdez-China alien smuggling conspiracy, but recruiting drivers and coordinating with Valdez-China to transport aliens to Albuquerque, New Mexico." Id. at 2.

> Additionally, the Government disclosed additional recorded conversations between Gomez-Montiel and a different undercover agent, in which Gomez-Montiel is asking the agent to obtain a warehouse in downtown El Paso to store drugs. During this conversation, Gomez-Montiel told the undercover agent that he will not have to worry about stashing people in the warehouse, because he (the defendant) keeps the two businesses separate.

Id. The Government states that it "has a good argument for aggravated role during the sentencing hearing, or at a minimum an argument that the defendant is ineligible for a minor role reduction." Id. at 2-3. It further argues that even if Defendant "is only held responsible for the 8 aliens he and Valdez-China attempted to coordinate the transportation of with the undercover agent, his range will not be 0-6 months as he asserts, but 18-24 months . . . ." Id. at 3. The Government argues that the defendants are properly joined under Rule 8(b) because they are "charged with conspiring and agreeing with each other to further a common scheme or plan, and all are part of a series of transactions involving the transportation of illegal aliens further into the United States." Id. at 4-5. It argues that severance is improper because (1) Defendant has failed to establish prejudice in being joined with his codefendants, (2) he will not be past time-served when trial commences, and (3) the fact that he is only alleged in one event of the conspiracy is "not a reason to sever." Id. at 6 (citing United States v. Cardall, 885 F.2d 656, 668 (10th Cir. 1989)). Finally, the Government argues that Defendant "has made no argument for why this Court should reconsider his order to remain detained pending trial[,]" and, in any event, Defendant is a danger to the community and presents a serious flight risk. Id. at 8.

In his Reply, Defendant initially revises his Guidelines range prediction to 8-14 months' imprisonment and notes that he will have been in custody for approximately nine months by the time trial is scheduled to begin on November 3, 2025.  ECF No. 140 at 1-2.  He apparently argues that this establishes the necessary prejudice.  See id.  Defendant devotes the remainder of his brief to arguing—for the first time—why he should be released from detention.  See id. at 2-3.  Specifically, Defendant argues that the Government has not established that he is a danger by alleging that he participated in two conversations without evidence as to how it intends to prove his identity.  Id. at 2.  He further argues that the Government has failed to establish with "proof or any statistical evidence" that he poses a flight risk.  Id. at 3.  In this regard, Defendant argues—without citation to authority—that to support the argument that a defendant poses a flight risk, the Government "must put forth proof in terms of numbers of individuals who have been granted release and fled to Mexico."  Id.  Counsel for Defendant "suggest[s] the number if available is a single digit number[,]" and even if such a number exists it "would not be tailored" to Defendant, so proving risk of flight is "an insurmountable burden."  Id.  In other words, Defendant appears to argue that the Government is required to support its "risk-of-flight" argument with statistics of defendants who have been granted pretrial release and then fled to Mexico, but such statistics—whatever they reveal—are nevertheless insufficient to establish that this Defendant is a flight risk.  See id.  He further argues that his active warrant out of Texas should not be considered as evidence that he is a flight risk because the warrant is from October 2024 which "appears to be evidence of lawful activity (lack of contact with law enforcmenet [sic]) as he was not even told or arrested on it when he entered the United States? [sic]"  Id.  In other words, Defendant appears to argue that the fact that Texas law enforcement has not had the opportunity to execute the warrant, and that

U.S. Border Patrol officials did not tell Defendant about the "sealed" warrant when he entered the U.S., should be evidence that he is not a flight risk.  See id.

Initially, the Court finds that Defendant was properly joined as a defendant under Rule 8(b) because he and his co-defendants "are alleged to have participated in the . . . same series of acts or transactions, constituting an offense[,]" Fed. R. Crim. P. 8(b), and specifically a conspiracy to transport, harbor, and bring illegal aliens into the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I).  See generally Indictment, ECF No. 3.  Indeed, Defendant does not argue that he was improperly joined, see generally ECF Nos. 136, 140, only that his trial should be severed from that of his co-defendants, see generally ECF No. 136.

"Joint trials of defendants who are indicted together are preferred because '[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" United States v. Hall, 473 F.3d 1295, 1301-02 (10th Cir. 2007) (quoting Zafiro v. United States, 506 U.S. 534, 537 (1993)).  Rule 14(a) permits a court to "sever the defendants' trials" if joinder "appears to prejudice a defendant[.]"  Fed. R. Crim. P. 14(a).  "The decision to grant separate trials under Rule 14 is 'within the sound discretion of the trial court . . . .'" United States v. Cox, 934 F.2d 1114, 1119 (10th Cir. 1991) (quoting United States v. Valentine, 706 F.2d 282, 289 (10th Cir. 1983)).  "Inasmuch as severance is a matter of discretion and not of right, the defendant must bear a heavy burden of showing real prejudice to his case." Hall, 473 F.3d at 1302 (quoting United States v. McConnell, 749 F.2d 1441, 1444 (10th Cir. 1984)).  "To establish prejudice, a defendant must point to a 'specific trial right' that was compromised or show the jury was 'prevent[ed] . . . from making a reliable judgment about guilt or innocence.'" United States v. Pursley, 474 F.3d 757, 766 (10th Cir. 2007) (alteration in original) (quoting Zafiro, 506 U.S. at 539).

Here, Defendant argues that his right to a speedy trial will be compromised absent severance. Mot. at 2. Under the Sixth Amendment, a defendant in a criminal prosecution "shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Supreme Court has established a four-part inquiry to determine whether a defendant's constitutional right to a speedy trial has been violated. Barker v. Wingo, 407 U.S. 514, 530-33 (1972). Under the Barker test courts must balance the following factors: "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." United States v. Yehling, 456 F.3d 1236, 1243 (10th Cir. 2006). "While no single factor is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial, only if the period of delay is 'presumptively prejudicial' need we inquire into the other factors." United States v. Dirden, 38 F.3d 1131, 1137 (10th Cir. 1994) (cleaned up) (quoting United States v. Tranakos, 911 F.2d 1422, 1427 (10th Cir. 1990)). "Delays approaching one year generally satisfy the requirement of presumptive prejudice." United States v. Batie, 433 F.3d 1287, 1290 (10th Cir. 2006).

The Court finds that Defendant's constitutional right to a speedy trial is not in jeopardy of being violated absent severance. As to the first Barker factor, the length of delay is calculated "from the time at which the speedy trial right attaches: the earlier of either arrest or indictment." Id. (citing United States v. Marion, 404 U.S. 307, 320-21 (1971)). In this case, Defendant was indicted (before he was arrested) on February 19, 2025. See ECF Nos. 3, 93. Trial is scheduled to begin on November 3, 2025, see ECF No. 135 at 2, resulting in a delay of 287 days, which equates to 9 months and 14 days. The Court finds that a delay of 287 days is not presumptively prejudicial. See Dirden, 38 F.3d at 1138 (finding that a seven and one-half month delay was not presumptively prejudicial); United States v. Kalady, 941 F.2d 1090, 1095 (10th Cir. 1991) (finding eight-month delay was not presumptively prejudicial); see also United States v. Gardner, 488 F.3d

700, 719 (6th Cir. 2007) (finding a 265-day delay was not presumptively prejudicial). Because the delay is not presumptively prejudicial, the Court need not address the remaining Barker factors. See Dirden, 38 F.3d at 1137; see also United States v. Muhtorov, 20 F.4th 558, 638 (10th Cir. 2021) ("The first Barker factor is a 'gatekeeper' because we examine the remaining factors 'only if a delay is long enough to be presumptively prejudicial.'") (quoting Batie, 433 F.3d at 1290); Jackson v. Ray, 390 F.3d 1254, 1261 (10th Cir. 2004) ("[A]s a threshold matter, only if the delay is 'presumptively prejudicial' need we inquire into the remaining Barker factors.").

The Court further finds joinder does not otherwise appear to prejudice Defendant. The Court is not persuaded by Defendant's vague argument that his "minor role, alleged participation in one act and total absence from any produced discovery suggest that continued delay could unfairly prejudice the defense by prolonging uncertainty and potentially impairing the ability to prepare for trial." Mot. at 2. To begin with, the Government disputes that Defendant played a minor role and asserts that Defendant does appear in evidence that has been disclosed to defense counsel. Resp. at 2-3. Regardless, "it is well established that defendants who played a minor role in a conspiracy may be tried with those who played a larger or dominant role." United States v. Ferrarini, 9 F. Supp. 2d 284, 290 (S.D.N.Y. 1998) (citing United States v. Cardascia, 951 F.2d 474, 483 (2d Cir. 1991); United States v. Casamento, 887 F.2d 1141, 1153 (2d Cir. 1989)). "[S]everance is not justified simply because a defendant played a minor role in a larger conspiracy." United States v. Hansen, 422 F. Supp. 430, 435 (E.D. Wis. 1976); see also United States v. Cresta, 825 F.2d 538, 554-55 (1st Cir. 1987) (observing that "the fact that the defendant plays a minor role and that a substantial portion of the evidence is not directly related to the defendant, does not make it automatically unlawful to try him with more important figures" and finding that the defendants had not shown anything beyond the "possible risk of prejudice that almost always exists when

multiple defendants with different roles are tried together" (citations and quotation marks omitted)).  "The fact that some defendants were not involved in each aspect of the overall enterprise [does] not require severing them or the charges against them."  Cardall, 885 F.2d at 668. Moreover, a "disparity in the quantity of evidence and of proof of culpability are inevitable in any multidefendant trial, and by themselves do not warrant a severance."  Cardascia, 951 F.2d at 483. And Defendant has not explained how "continued delay could unfairly prejudice the defense by prolonging uncertainty and potentially impairing the ability to prepare for trial."  Mot. at 2.  The Court finds this unexplained, conclusory argument to be without merit.

Defendant's stronger (but ultimately unsuccessful) argument for prejudice is that by the time trial is scheduled to commence he may be approaching a time-served sentence.  See Mot. at 2; Reply at 1-2.  However, his prediction that he is facing a Guidelines imprisonment range of 8-14 months—based on an offense level of 11 and a criminal history category of I, see Reply at 1—is highly speculative.  First, it assumes that Defendant will receive a minor role reduction under U.S.S.G. § 3B1.2.  See id.  The Government believes that it "has a good argument for aggravated role . . . or at a minimum an argument that the defendant is ineligible for a minor role reduction." Resp. at 2-3.  At this point in the proceedings, the Court cannot assume that Defendant will receive a minor role reduction.

Second, Defendant's calculation assumes that he will receive a Zero-Point Offender reduction under U.S.S.G. § 4C1.1.  See Reply at 1.  However, to receive the Zero-Point Offender reduction, a defendant must satisfy eleven criteria, including that "the offense did not result in death or serious bodily injury[.]"  U.S.S.G. § 4C1.1(a)(4).  Here, the Indictment alleges that "an undocumented alien died from heat exposure" and one of the defendants "instructed the group of undocumented aliens to leave the victim in the desert near Santa Teresa, New Mexico."  ECF No.

11

3 at 5.  Another criteria for receiving the Zero-Point Offender reduction is that the defendant does not receive an aggravating role adjustment under Section 3B1.1.  U.S.S.G. § 4C1.1(a)(10).  As the Court has noted, the Government believes that it "has a good argument for aggravated role[.]" Resp. at 2.  For at least these reasons, at this point in the proceedings, the Court cannot assume that Defendant will receive a Zero-Point Offender reduction.

Rather, at this point in the proceedings, the most the Court can assume is that if the Government proves the allegations contained in the Indictment and the jury finds Defendant guilty of the offense charged, Defendant will have a base offense level of 12 under U.S.S.G. § 2L1.1(a)(3) because the offense involves smuggling, transporting, or harboring unlawful aliens, and will have a three level increase under U.S.S.G. § 2L1.1(b)(2)(A) because the offense involves eight aliens. Indeed, the Parties agree on this much.  See Resp. at 3; Reply at 1.  Based on a total offense level of 15 and a criminal history category of I, Defendant's guideline imprisonment range would be 18-24 months.  See U.S.S.G. Ch. 5 Pt. A (Sentencing Table).  Under this calculation, Defendant will not be approaching a time-served sentence when trial commences or when sentencing is likely to occur.  For these reasons, the Court finds that Defendant has failed to satisfy his "heavy burden to show prejudice by the joinder[,]" Hopkinson, 631 F.2d at 668, and will **DENY** his request for severance.

As to Defendant's alternative request for revocation of Judge Ritter's Detention Order, the Court's review is de novo, Cisneros, 328 F.3d at 616 n.1, and the Government bears the burden the burden of proof, id. at 616.  Specifically, "[t]he government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence[.]"  Id. at 616.  Here, the Government has not presented the Undersigned with any evidence regarding Defendant's risk of flight or

dangerousness to others or the community. Accordingly, the Court will set this matter for an evidentiary hearing and will **DEFER RULING ON** Defendant's alternative request for revocation of Judge Ritter's Detention Order pending the outcome of that hearing.

## IV.     Conclusion

Therefore, it is **HEREBY ORDERED** that Defendant's Opposed Speedy Trial Demand, Motion to Sever or Alternatively Motion for Reconsideration of Release, ECF No. 136, is **DENIED IN PART AND DEFERRED IN PART**, and specifically it is **DENIED** to the extent it requests severance and **DEFERRED** to the extent it alternatively requests revocation of Judge Ritter's Detention Order. An evidentiary hearing will be set by separate notice.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE